# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| JAMES R. PIPES | * | CIVIL ACTION NO. 07-1762 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| UNITED PARCEL SERVICE, INC., ET AL. | * | MAG. JUDGE KAREN L. HAYES |

## MEMORANDUM RULING

Before the court is a motion for sanctions [doc. # 71] filed by plaintiff, James R. Pipes. For reasons assigned below, the motion [doc. # 71] is denied.[1]

## Procedural Background

On April 30, 2009, plaintiff filed the instant motion to sanction defendant, United Parcel Service, Inc. ("UPS"), due to UPS's alleged spoliation of evidence, i.e., UPS's deliberate and intentional destruction of relevant evidence in bad faith. (M/Sanctions, ¶ 5). Plaintiff's motion requested "an order invoking an adverse inference in connection with [] UPS' motion for summary judgment, delivering an adverse inference instruction to the jury at trial, and awarding the plaintiff the reasonable costs and attorney fees he has incurred in bringing this motion and in investigating and attempting to obtain the discovery at issue." *Id.*, Prayer.

After obtaining an extension of time, UPS filed its opposition memorandum on June 11, 2009. (Opp. Memo. [doc. # 87]). During the delay for movant to file his reply brief, the district court granted defendants' pending motions for summary judgment and dismissed plaintiff's claims against all defendants, with prejudice. (June 16, 2009, Ruling and Judgment [doc. #s 88-

---

[1] As this motion is not excepted within 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this order is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

89]). In light of this intervening development, the undersigned directed the parties to submit briefs addressing what effect the ruling and dismissal had upon plaintiff's motion for sanctions. (June 17, 2009, Order). The parties so complied, and plaintiff conceded that his motion was moot insofar as it sought an adverse evidentiary inference, but maintained the viability of his request for monetary sanctions. (Pl. Memo. [doc. # 92]). Meanwhile, on July 8, 2009, plaintiff filed a notice of appeal from the court's June 16, 2009, Judgment. [doc. # 94].[2] The motion for sanctions is now ripe.

## Law

Spoliation is defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Toth v. Calcasieu Parish*, 2009 WL 528245 (W.D. La. Mar. 2, 2009) (Trimble, J.) (citation and internal quotation marks omitted). A party's duty to preserve evidence arises when "the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Id*. A person "anticipat[ing] being a party . . . to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary." *Id*. The duty to preserve extends to evidence that a party "knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Id*. "[T]he duty to preserve extends to those employees likely to have relevant information-the key players." *Id*.

When a party has destroyed evidence, the court may impose sanctions under Rule 37(b)

---

[2] The district court "retains jurisdiction to resolve motions for sanctions and attorneys' fees while a judgment on the merits is pending on appeal." *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 524 (5th Cir. 2002) (citations omitted).

or pursuant to its inherent authority. *See, Pressey v. Patterson*, 898 F.2d 1018, 1020 (5th Cir. 1990) (discussing possible sources for the court's authority).[3] Sanctions on the latter basis, are limited to instances of "bad faith or willful abuse of the judicial process." *Pressey, supra* (citation omitted); *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 2465 (1980) (finding of bad faith is required for any sanction under the court's inherent powers). Likewise, under Rule 37(b), a finding of bad faith or willful misconduct is required "to support the severest of remedies." *Id*. However, courts do "not automatically draw an inference of bad faith simply because documents are destroyed after the initiation of litigation . . ." *Russell v. University of Texas of Permian Basin*, 234 Fed. Appx. 195, 208, 2007 WL 1879157, *10 (5th Cir. June 28, 2007) (unpubl.) (citation omitted). The courts also ordinarily "do not draw an inference of bad faith when documents are destroyed under a routine policy." *Id*.

Under Rule 37(b), even if a party's failure to retain potentially relevant evidence was merely negligent, the court may still impose an appropriate sanction. *See, Pressey, supra* (suggesting that upon remand, district court may deem certain facts admitted due to defendants' negligence). "And although Rule 37(b) applies to all failures to comply, whether wilful or not, the presence or lack of good faith in the parties is relevant to the orders which should be given the severity of the sanctions." *Bon Air Hotel, Inc. v. Time, Inc.*, 376 F.2d 118, 122 (5th Cir. 1967) (citation omitted). Rule 37 establishes a flexible means for a court to enforce compliance with the federal discovery procedures through a broad array of remedies and penalties. *Id*. In deciding upon an appropriate sanction for spoliation of evidence, the court should consider

---

[3] "Even though a party may have destroyed evidence prior to issuance of the discovery order and thus be unable to obey, sanctions are still appropriate under Rule 37(b) because this inability was self-inflicted." *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D. N.Y. Sept. 27, 1991) (citation omitted).

> (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

*Menges v. Cliffs Drilling Co.*, 2000 WL 765082 (E. D. La. June 12, 2000) (quoted source omitted).

### Relevant Facts

Plaintiff, James Pipes, worked as a delivery driver for UPS from October 1999 until April 2007, when he was discharged for his alleged fault in an April 16, 2007, single vehicle accident while at the wheel of his UPS delivery truck. *See* June 16, 2009, Ruling [doc. # 88]. Throughout the resulting investigation and the CBA grievance appeal process, Pipes maintained that the accident was caused by the vehicle's right front tire blowing out. *Id*. Ultimately, on or about August 16, 2007, the CBA's Deadlock Committee denied Pipes's grievance, and upheld his discharge. *Id*.

On October 27, 2007, plaintiff filed the instant suit for damages against UPS and the International Brotherhood of Teamsters under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. (Compl., ¶ 1). The instant motion seeks to sanction UPS for its failure to preserve the subject tire and for destroying certain Preventative Maintenance Inspection report(s) associated with the subject vehicle. In response to plaintiff's motion for sanctions, UPS adduced evidence regarding the handling and fate of the destroyed/misplaced evidence.

a) The Tire

Robert Russell, UPS's District Labor Relations Manager for the Gulf South District, declared that following the April 2007 accident, he instructed UPS personnel to preserve the truck's right front tire. (Russell Decl., Def. Exh. E). Throughout the grievance process, Russell periodically inspected the tire to ensure that it was holding air. *Id*. After the grievance process ended in August 2007, Russell believed that the claim had been ultimately resolved; thus, he did

not "specifically request that the tire be preserved any longer." *Id*. Russell did not instruct personnel to destroy the tire; he just did not ensure the continued preservation of the tire. *Id*.

Robert Glen Davis, a UPS mechanic, declared that he personally placed the subject tire from Pipes's vehicle in the parts storage room and placed a red tag on it. (Davis Decl., Def. Exh. G). He understood that the tire was to be preserved and not used. *Id*. He saw the tire for at least six to eight months whenever he would go into the storeroom. *Id*. He does not recall the last time that he saw it. *Id*. He recently attempted to locate the tire, but was unable to do so. *Id*. Davis did not destroy the tire and is not aware of anyone else doing so. *Id*. Davis suspects that the tire was retrieved by a UPS tire vendor. *Id*.

Joffrey Cleveland, another UPS mechanic, and member of the Teamsters Local 568, declared that he recalled seeing a tire with a red tag on it, in the parts storage room. (Cleveland Decl., Def. Exh. F). He understood that the tire was the pertinent tire from Pipes's vehicle on the day of the accident, and that it was to be preserved. *Id*. Cleveland recalled seeing the tire for several months, but does not recall the last time that he saw it. *Id*. Cleveland did not destroy the tire, and is not aware of anyone else doing so. *Id*. Cleveland believes that the tire was picked up by a UPS tire vendor. *Id*.

b) The Preventative Maintenance Inspection Report

A preventative maintenance inspection ("PMI") is a thorough inspection of the vehicle to find maintenance issues, change the oil, inspect the brakes, etc. (Deposition of Gerald Castille, pgs. 66-67; Pl. Reply, Exh. 3 [doc. # 42]). The report also contains a section to note the tire tread depth and pressure. *Id*. The inspections are performed every 6,000 miles or 120 days, whichever comes first. *Id*. at 23-24. Each driver performs a pre-trip and post-trip inspection. *Id*. If a driver sees that a tire is low, then the driver will write it on the driver vehicle inspection report. *Id*. UPS retains PMI reports for vehicles that are involved in litigation. *Id*. at 68-69. The

last PMI performed on the subject vehicle before the accident occurred on January 5, 2007. *Id*. at 73. The only other record of tire pressures prior to the accident would have been if a driver had noted a problem with a tire. *Id*. at 74.

Roy Waits, a UPS mechanic, declared that tire pressure was one of the measurements recorded on the PMI form. (Decl. of Roy Waits; Def. Exh. H). He stated that if the tire pressure was not in an acceptable range during the PMI, then he would inflate or deflate the tire accordingly. *Id*. Once the PMI is complete, the tire pressure is within the acceptable range for the tires on the vehicle. *Id*. UPS retains PMI reports for fourteen months as required by regulations issued by the Federal Motor Carrier Safety Administration. *Id*. As a matter of course, Waits reviews the files on the approximately 30 vehicles that he is responsible for, and discards any PMIs that are older than fourteen months. *Id*. According to Waits, in April 2008, he destroyed the PMI report(s) for the vehicle that Pipes was driving at the time of his accident. *Id*. When Waits destroyed the PMI report(s) for Pipes's vehicle, he was not aware that it could be relevant to the instant lawsuit. *Id*.

According to Robert Russell, UPS's District Labor Relations Manager, he believed that when Pipes's grievance was finally denied in August 2007, the claim was complete because the collective bargaining agreement provided that the grievance process was "final and binding." (Russell Decl.; Def. Exh. E). Throughout the grievance process, UPS and Local 568 exchanged information and evidence that was presented to the grievance panels, including photographs from the accident scene, Pipes's accident history, the subject vehicle's Driver Vehicle Inspection Reports ("DVIRS"), the Vehicle's Equipment Repair History, and information regarding Southern Tire Mart's inspection of the right front tire. *Id*. The Local Union never requested the PMIs, nor did it challenge the mechanical condition of the vehicle prior to the accident. *Id*. In his seven years as District Labor Manager, and after handling hundreds of grievances on behalf

of UPS, Russell does not recall any employee filing a lawsuit to challenge the outcome of the grievance process. *Id*. After Pipes filed suit, Russell met with UPS's counsel in an effort to identify numerous potentially relevant documents and information. *Id*. There is no indication that anyone associated with UPS identified the PMI reports as potentially relevant evidence prior to their destruction.

## Discussion

As mentioned above, plaintiff sued UPS and the International Brotherhood of Teamsters under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. (Compl., ¶ 1). Under § 301, "[t]o prevail against either the company or the Union, . . . [the employee] must not only show that [his] discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." (Ruling [doc. # 88]) (citations omitted). Here, the court dismissed plaintiff's § 301 claim against UPS due to Pipes's inability to establish that the union breached its duty of fair representation. *Id*. The court did not consider the cause of the accident. *Id*. Thus, any evidence to be gleaned from the PMI report and tire ultimately proved irrelevant to the court's decision. Accordingly, plaintiff's case was not materially prejudiced by UPS's failure to preserve the evidence at issue.[4] In the context of Rule 37(b) sanctions, it is significant, but not controlling that a party's discovery transgressions do not result in prejudice to the other side. *Marshall v. Segona*, 621 F.2d 763, 768-769 (5th Cir. 1980).

Nonetheless, in gauging UPS's culpability, the court is compelled to consider the potential relevance of the evidence at the point in the litigation timeline that it was lost or destroyed. Although it is apparent that UPS destroyed the PMI report(s) after the instant suit was filed, the report's potential relevance in this case was tenuous, at best. The primary information

---

[4] Of course, should plaintiff prevail on appeal, then the instant analysis may be subject to revision.

7

sought to be gleaned from the PMI report presumably was the vehicle's tire pressure, but the vehicle's tire pressure some four months before the accident is not likely to have any probative effect regarding tire pressure on the date of the accident. Moreover, despite having engaged in a multi-layered, adversarial grievance process, there is no indication that either side relied upon or consulted the PMI report. These prior adversary proceedings likely influenced the approach taken by UPS personnel to document retention in this case, and may have lulled them, at least initially, into complacency.

On the other hand, the tire clearly represented a potentially relevant piece of evidence which could have helped to show whether Pipes was at fault in the accident. Unlike the PMI report, however, UPS did not destroy the tire after suit commenced; rather, UPS failed to retain the tire during the intervening period between the resolution of the grievance process and the initiation of the instant litigation. According to the uncontroverted declaration of Robert Russell (the UPS manager who initially preserved the tire) he believed, based upon his considerable experience, that the claim was finally resolved once the grievance was denied in August 2007. (*See* Russell Decl.).

Upon consideration of the foregoing circumstances, the undersigned finds that UPS did not act in bad faith when it destroyed the PMI report and when it failed to retain the subject tire. At worst, UPS's conduct was no more than negligent. Although the court is authorized under Rule 37(b) to impose monetary sanctions due to a party's negligent failure to retain evidence, *see* discussion, *supra*, in the undersigned's discretion, sanctions are not warranted in this instance due to several mitigating factors, including the lack of material prejudice suffered by plaintiff, the (related) fact that the evidence ultimately proved irrelevant, the PMI report's lack of probative value in the first instance, and because UPS personnel lost track of the tire after completion of the grievance process, but before suit was filed.

For the foregoing reasons,

The motion for sanctions [doc. # 71] filed by plaintiff, James R. Pipes is DENIED.

THUS DONE AND SIGNED at Monroe, Louisiana, this 22nd day of July 2009.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE